Davis, P. J.
This action was brought to recover a sum alleged to have been agreed to be paid by the appellant to the decedent, John P. O’Neill, for his interest in a certain farm held and owned by the appellant and O’Neill as tenants in common. The substance of the alleged agreement is, that on receiving title to the whole of the. farm through amicable proceedings to foreclose a mortgage then existing upon it, the appellant should pay O’Neill $1,666, being one-half of the sum originally invested by O’Neill in the purchase of the farm. A foreclosure was had, it is claimed, under this agreement, at which the appellant purchased the farm and took title to the whole thereof, giving his ■ individual bond and mortgage in lieu of those previously existing, but afterwards refused to pay the price stipulated for O’Neill’s interest.
We see no reason why such an agreement, when consummated by the actual sale and conveyance of the whole title, is not a valid one upon which an action can be maintained *413 for the price agreed upon as for lands sold and conveyed at a purchaser’s request at a stipulated price. An agreement of purchase and sale reduced to writing, &e., is not at all necessary when an action is brought to recover an agreed price for lands actually sold and conveyed, pursuant to an oral agreement, where the consideration remains' unpaid. And that, in substance, was the alleged agreement in this case, except that the purchaser was to take the title through an amicable foreclosing to be produced and consummated by the seller. We have already determined this question on the demurrer to the answer brought before ns by appeal from the special term.
But questions as to the admissibility of evidence arose upon the trial of this case that call for consideration. This action was brought by O’Neill in his lifetime. On his decease the present plaintiff was substituted as his temporary administratrix. The chief testimony in the case to support the alleged agreement was given by one Tobias, a lawyer, who was to some extent connected with O’Neill in business and acted on his behalf in carrying out the agreement. He gave testimony tending to establish the agreement by conversations had in his office and in his presence between O’Neill and the appellant. The agreement was denied by the appellant in his answer, and for the purpose of contradicting or impairing the testimony of Tobias, the defendant sought to give testimony himself, showing a condition of things inconsistent with the alleged making of such an agreement. With this view, amongst other things lie was asked the following question :
“Will you state to the jury what induced you to have the property foreclosed ? ” This question was objected to on the ground “ that it is a personal communication with the deceased.” The objection was sustained and an exception taken. The appellant was then asked: “ State the situation of the property at the time before the foreclosure suit as to the payment of interest and all that ? ” The same objection and ruling was made and the same exception taken.
The appellant claimed that the foreclosure was not made *414 because of any such agreement as the plaintiff alleged, but because of O’Neill’s neglect to pay interest on the mortgages, and to keep up- his part of the expenses of carrying the property._ These were extrinsic facts clearly competent to be proved as tending to maintain the defendant’s theory of the -case. We see no reason why they could not be proved by his testimony. They were not of necessity personal transactions or communications had between the defendant and the •deceased, and if they turned out to be in whole or in any part of that character, they could have been to such extent -excluded when the fact appeared.
In Pinney agt. Orth (88 N. Y,, 447) it was held that “a party is not precluded from testifying to extraneous facts which tend to show that one who has testified to such a "transaction has testified falsely, or that it is improbable that Ins statement can be true” (See, also, Lewis agt. Merritt, 98 N. Y., 206).
The facts and circumstances which the questions excluded were designed to call out may, perhaps, have been such as to •satisfy the jury that Tobias had not testified truly as to the-making of the alleged agreement, and they were not necessarily within the inhibition of section 829 of the Code, and therefore the testimony should have been received, and so far as it appeared to be outside of the inhibition of that section and suited to the consideration of the jury.
The following questions were also asked the appellant and excluded under the same objection and exception:
“ State whether or not you ever made any agreement with Mr. Tobias acting for Mr. O’Neill, O’Neill being absent, in -relation to the purchase of O’Neill’s interest in such farm ? ”
“ How many times were you in O’Neill’s office in relation, to this transaction ? ”
The ruling as to these questions was erroneous. Tobias had given testimony tending to show that he had conversations with appellant on the subject of the alleged agreement when O’Neill was not present, and in relation to the payment of the *415 amount sued for. The defendant was not precluded from contradicting that testimony or from showing affirmatively bow often he had been at O’Neill’s office, and whether"or not there had been any agreement made between himself and Tobias in the absence of O’Neill.
In Pinney agt. Orth (ubi sup.) the court said: “We think that Mr. Orth, the defendant, was competent to testify that he was not in the city of New York at the time referred to by the witness, or that the witness was at some other place, or that he never met the witness at the office when the conversations are alleged to have occurred.” It is not the intention of the Code to prevent a party to a suit from testifying to any extrinsic fact that tends to contradict a witness who swears to transactions or communications had between such party and.a deceased person even where he cannot directly testify that no such conversation or transaction was ever had. It was not the intention to prevent the contradiction of a living witness, but to prevent a living party to a transaction or communication from testifying to it himself where death has closed the mouth of the other party. So when a living witness swears to a .contract made by a defendant with a deceased party at a specified time or place, there is in our judgment nothing in the Code to prevent the defendant from testifying that at the time named he was in Europe or at some distant place, rendering it .impossible that the witness speaks the truth.
Subsequently to the foreclosure and purchase by the defendant of the farm, it was shown that one HcOandless commenced a suit against the defendant and O’Neill, alleging that he was in equity an owner of one-third of the farm, and that the proceedings in the foreclosure suit and in the sale to the defendant were fraudulently had and taken to deprive him of his interest in the property. This suit was an amicable one as between HcOandless and O’Neill, it being arranged that no judgment should be taken against O’Neill, but he should be made a formal party, because the title of the farm had been, .prior tó the foreclosure, in him and the defendant. It was *416 testified that O’Neill furnished all the facts stated in the complaint to the attorney of McOandless, who verified the complaint (McCandless being a non-resident) upon the statements of O’Neill. The attorney testified in substance that the statements of the complaint were those made to him by O’Neill, who, though a defendant, instigated the suit. The complaint was then offered and rejected and exception taken.
We think the complaint was competent as declarations of O’Neill. The declarations, it is claimed, tended to contradict the allegations of O’Neill’s complaint in this action as to the reasons for having the foreclosure and sale of the farm. The complaint offered in evidence is not before us, and we cannot see how far it would have gone toward that object, but it was not excluded because it did not tend to such contradiction, and we think it was error to exclude it.
For these errors, without considering the other points presented by the appellant, we are of opinion that the judgment must he reversed and a new trial ordered, with costs to abide the event.
Brady and Daniels, JJ., concurred.